UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JOHN LEE,<br><br>    Plaintiff,<br><br>vs.<br><br>SUE WESSELS,<br><br>    Defendant. | Case No.: 1:17-cv-00200-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 21)**<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 23)**<br><br>**DEFENDANT'S MOTION TO SEAL (DKT. 25)**<br><br>**DEFENDANT'S AMENDED MOTION TO SEAL (DKT. 27)** |

Pending are Plaintiff's Motion for Summary Judgment (Dkt. 21), Defendant's[1] Motion for Summary Judgment (Dkt. 23), Defendant's Motion to Seal (Dkt. 25) and Defendant's Amended Motion to Seal (Dkt. 27). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff John Lee ("Lee") is an inmate in the custody of the Idaho Department of Correction ("IDOC"). While he was incarcerated at the Idaho Maximum Security Institution ("IMSI") in July 2016, he was prescribed Risperdal, an antipsychotic medication, to treat his

---

[1] This case initially included two additional defendants, Dr. Stoddart and Dr. Davis-Johnson. Prisoner Compl. (Dkt. 3). After Plaintiff did not timely serve those defendants, the claims against them were dismissed and they were terminated as defendants in this action on February 21, 2018. (Dkt. 20.) The caption has been updated to reflect that Defendant Sue Wessels is the sole remaining defendant in this action.

**MDO RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, MOTIONS TO SEAL - 1**

diagnosed paranoid schizophrenia. Patchett Decl. ¶ 5 (Dkt. 24). After he refused treatment, a three-person Involuntary Medication Hearing Committee (otherwise known as a *Harper*[2] panel) was convened on August 16, 2016. Patchett Decl. ¶ 7 and Ex. B at 7 (Dkt. 24). The *Harper* panel was comprised of IDOC deputy warden Sue Wessels, defendant here, as well as two private medical doctors who are not IDOC employees. Patchett Decl. Ex. D at 13–19 (Dkt. 24). After the panel authorized forcibly medicating Mr. Lee, he appealed the decision to IMSI Warden Al Ramirez on August 17, 2016, and the warden upheld the decision on August 19, 2016. Patchett Decl. ¶ 9 and Ex. F at 21 (Dkt. 24). Subsequently, Mr. Lee's treating physician Dr. Scott Eliason prescribed him Haldol, a different antipsychotic medication, in lieu of Risperdal. Patchett Decl. ¶ 10 (Dkt. 24). When Mr. Lee refused to take the medication, he was forcibly medicated on August 23, 2016. Patchett Decl. ¶ 11 and Ex. G at 23 (Dkt. 24). Mr. Lee has since complied with taking his prescribed medication. Patchett Decl. ¶ 12 (Dkt. 24).

In October 2016, Mr. Lee sued, under 42 U.S.C. § 1983, the members of the *Harper* panel in case 1:16-cv-00443-CWD, seeking an injunction preventing IDOC from forcibly medicating him in the future.[3] In February 2017, after Mr. Lee did not timely file an amended complaint after notice of deficiencies in his claim, that case was dismissed.

Mr. Lee filed this lawsuit in May 2017, bringing the same claims against the same defendants but in a complaint that was more detailed than in his prior case. Among other things, he claims that the medication interferes with the practice of his religion (Buddhism), because he "need[s] a clear mind and need[s] to be in control of [his] thoughts to meditate, [and] any outside

---

[2] *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (holding that a prisoner has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.")

[3] The Court takes judicial notice of the record in Case 1:16-cv-00443-CWD.

**MDO RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, MOTIONS TO SEAL - 2**

interference effects [sic] [his] ability to achieve spiritual enlightenment." Prisoner Compl. 4 (Dkt. 3). He avers that meditation is "the only way" he can achieve spiritual enlightenment. He contends that there are less restrictive alternatives that the prison could use to further its interest in safety, such as "administrative segregation, higher security measures, a single cell, single or double escort when outside of cell[,] etc." *Id.*

Mr. Lee also claims that he is inhibited from pursuing his cultural beliefs, such as martial arts, because of the medication. *Id.* at 5. Mr. Lee contends that the medication causes tremors, stiffness, and muscle spasms which make it difficult for him to practice his desired martial arts. Finally, Plaintiff claims that the medication inhibits his ability to adequately pursue his appeal in his ongoing state criminal case. *Id.* at 5–6.

This Court issued an Initial Review Order on August 28, 2017, holding that Mr. Lee may proceed on his claims for injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. (Dkt. 11.) Mr. Lee's other claims were dismissed. However, Mr. Lee did not timely serve defendants Dr. Stoddart and Dr. Davis-Johnson; hence, his RLUIPA claims against them were dismissed. (Dkt. 20.) Only Mr. Lee's RLUIPA claim against Defendant Wessels remains pending.

On May 10, 2018, Mr. Lee moved for summary judgment (Dkt. 21). On June 5, 2018, Ms. Wessels moved for summary judgment (Dkt. 23). On June 6, 2018, Ms. Wessels moved to seal certain documents filed in conjunction with her motion for summary judgment. (Dkt. 25.) She amended her motion to seal (Dkt. 27) the same day by filing a new motion.

## LEGAL STANDARD

1. **Standing Requirements**

Only certain disputes are "appropriately resolved through the judicial process" in federal

courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Id.* Under this "case" or "controversy" requirement, a party invoking federal jurisdiction must demonstrate that he has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.*

It must be "likely" as opposed to merely "speculative" that the alleged injury will be redressed by a favorable decision. *Id.* at 561. Where none of the relief requested, including injunctive relief, would likely remedy the alleged injury in fact, the plaintiff lacks standing and his claim is subject to dismissal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). A lack of redressability may be evident in various ways, including when "the wrong parties are before the court." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982); *see also Am. Dev. Corp. v. Strack*, 81 F.3d 167 at *3 (9th Cir. 1996) (unpublished) (applying *Gonzales* and holding that "[n]either Strack nor Republic are proper defendants because the controversy regarding the appointment of the receiver and the proper scope of the receiver's authority is between the FDIC and ADC."). It is the plaintiff's burden to show that the alleged harm would be redressed by the remedy sought. *See Bowker v. Morton*, 541 F.2d 1347, 1350 (9th Cir. 1976).

Other courts have dismissed RLUIPA claims for lack of redressability. In *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015), the district court's dismissal of plaintiff's RLUIPA claims for injunctive relief was upheld, in part because "any injunctive relief ordered in Jones' favor would have no practical impact on [his] rights and would not redress in any way the injury he originally asserted." *Id.* at 1031. (Alteration in original; internal citation and quotation marks

omitted.)

Federal courts must examine jurisdictional issues such as standing, including redressability, even if the issue is not raised by any party. *U.S. v. Hays*, 515 U.S. 737, 742 (1995).

**2. Motion to Seal Standard.**

To seal documents related to a dispositive motion, the moving party must show "compelling reasons" to seal. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016). This standard is met when a court finds "a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture. The court must then conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1097 (internal citations and quotation marks omitted).

**DISCUSSION**

**1. Mr. Lee's RLUIPA Claim against Ms. Wessels Is Dismissed for Lack of Standing.**

Ms. Wessels argues that she does not have the authority to carry out the injunctive relief sought by Mr. Lee. Def.'s Mem. ISO MSJ 7–8 (Dkt. 24-4). In her summary judgment motion, she contends that to justify injunctive relief under RLUIPA, "a plaintiff must name as a defendant a government official who can appropriately respond and change policy if injunctive relief is ordered." *Id.* at 7 (quoting *Hogan v. Idaho State Board of Corrections*, 2018 WL 2224045 (D. Idaho May 15, 2018)).

In *Hogan*, the court allowed a RLUIPA claim to proceed against (1) IDOC overseers responsible for implementation of facility rules, policies, and procedures; (2) the IDOC Director, alleged to have approved the standard operating procedure challenged; (3) the IDOC Chief of the Division of Prisons, responsible for ensuring that facility staff implement standard operating

procedures; (4) the IDOC Deputy Chief of the Division of Prisons, who was allegedly responsible for providing daily oversight at the facility; and (5) members of the committee responsible for reviewing and updating the at-issue standard operating procedures. *Hogan*, 2013 WL 5348394 at *8. The court was satisfied that the "roles and responsibilities" of each of these individual defendants demonstrated their authority to change IDOC policy. *Id.* at *9.

But in *Epps v. Grannis*,[4] by contrast, a federal district court granted summary judgment against a pro se prisoner on his RLUIPA claim as to individual defendants who lacked the authority to carry out the requested injunctive relief. 2013 WL 5348394 at *3. The court highlighted numerous declarations filed by the Defendants demonstrating that "none of the sued Defendants have authority to change their actions or change the prison policies of which Plaintiff complains." *Id.* *Epps* relied on Ninth Circuit precedent for the proposition that a RLUIPA plaintiff must name as a defendant a government official who can appropriately respond to injunctive relief. *Id.* (citing *Hartmann v. Calif. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)).

Mr. Lee seeks an order from this Court directing the IDOC "to never force medicate me again nor to treat me differently because they think I need to be medicated. To be housed in a single man cell." Prisoner Compl. 2 (Dkt. 3). He named Ms. Wessels as a defendant because she "approved the use of force to medicate me. Defendant was acting as a *Harper* panelist at a *Harper* hearing." *Id.* at 3. Mr. Lee alleged that Defendant "should be held liable as a

---

[4] 2013 WL 5348394 (S.D. Cal. Sept. 23, 2013).

supervisor" for "set[ting] in motion a series of acts by others."[5]  *Id.*

Ms. Wessels filed a declaration attaching an IDOC Standard Operating Procedure entitled "Involuntary Medication and Treatment."  Wessels Decl. ¶ 2, Ex. A (hereinafter "SOP") (Dkt. 24-2).  She contends the SOP provides that "only the IMHC[6] as a committee, rather than any sole member of the IMHC, has authority to approve or disapprove a request for involuntary medication of an inmate."  Def.'s Mem. ISO MSJ 8 (Dkt. 24-4).  Her argument is supported by the content of the SOP, which provides in relevant part:

- ◼ The IMHC "shall determine whether non-emergency involuntary medication is appropriate based on the evidence presented at the involuntary medication hearing." SOP § 8 (Dkt. 24-2 at 14).
- ◼ The hearing officer presiding over the hearing "will allow the IMHC to deliberate on whether the offender meets the criteria for being administered non-emergency involuntary medication." *Id.* at § 9.
- ◼ The IMHC "shall be responsible for rendering a decision" and the chair of the IMHC "shall preside over their deliberations and summarize the IMHC's findings and evidence relied upon to reach a decision." *Id.*

Moreover, the SOP provides that unanimity of the IMHC is not required to approve involuntarily medicating an inmate, but "[i]f the decision was not unanimous, the involuntary medication hearing officer shall poll each IMHC member as to their individual findings so that

---

[5] The quoted allegations here apply to dismissed defendant Dr. Stoddart, but Mr. Lee's Prisoner Complaint elsewhere names Ms. Wessels as a Defendant and expressly refers back to the same allegations.  *Id.* at 8.

[6] Per the SOP, the IMHC is the "Involuntary Medication Hearing Committee."  SOP at ¶ "Definitions" (Dkt. 24-2 at 6).  The terms "IMHC" and "*Harper* panel" are interchangeable.

**MDO RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, MOTIONS TO SEAL - 7**

their findings can be reflected in the involuntary medication hearing record." *Id.* There is no right in the SOP for an individual member of an IMHC to unilaterally approve or disapprove a request to medicate an inmate involuntarily. Nor is there a described method for a member of an IMHC to change his or her mind after the hearing. An appeal of the findings and conclusions of an IMHC is available to the inmate. If such an appeal is made, it is heard by the "facility head," not by the IMHC or its members, and the IMHC's decision may be overridden only if such decision "was based on inaccurate or erroneous factual evidence." *Id.* at § 10. A decision granting authority to involuntarily medicate an inmate is valid for up to 180 days; after that period ends, another IMHC must be convened and new findings must be made to continue non-emergency involuntary medication. *Id.* at § 11.

More broadly, the SOP provides that "[t]he director of the Education, Treatment, and Reentry Bureau and deputy chief of the Prisons Bureau shall be jointly responsible for the implementation of this SOP and for designating appropriate personnel to develop and implement procedures in conjunction with this SOP." *Id.* at ¶ "Responsibility" (Dkt. 24-2 at 7).

Ms. Wessels testifies, and Mr. Lee does not dispute, that she is a Deputy Warden employed by IDOC, that she does not render medical diagnoses or make psychiatric or other medical treatment plans, and that she does not provide direct psychiatric or other medical care to inmates. Wessels Decl. ¶¶ 1, 4 (Dkt. 24-2). Further, she has no authority to, and does not, override psychiatric or other medical or psychological diagnoses, judgments, decisions or treatment plans rendered by psychiatrists, physicians, psychologists or other medical or mental health professionals who provide medical treatment to inmates at IMSI. *Id.* ¶ 4.

In his response to Ms. Wessels's motion for summary judgment (Dkt. 32.), Mr. Lee argues that he is "not looking to change policy or override the decision to involuntarily

medicate" him, he is "just looking to see that in the future if the *Harper* panel is used … that the involuntary medication is not approved and if the decision by the *Harper* panel needs to be unanimous it is within Sue Wessell's power to see that that does not happen." *Id.* at 2.

The discussion above illustrates the disconnect between what Mr. Lee seeks to obtain in his lawsuit and what is possible. His claim against Ms. Wessels must be dismissed because his alleged injury is not redressable in this action, and he therefore lacks standing. Ms. Wessels lacks authority to implement any possible RLUIPA court-ordered relief. She is one of three *Harper* panelists who unanimously authorized involuntarily medicating Mr. Lee. The other two panelists who were also named as defendants were dismissed from this lawsuit for lack of service. Moreover, Ms. Wessels followed an Idaho Department of Correction Standard Operating Procedure that expressly places the power focused upon by Mr. Lee not in the hands of Ms. Wessels, but in the hands of others. Further, the time frame applicable to the particular *Harper* panel which approved the involuntary medicating of Mr. Lee has long since expired.

Even if this Court were to insert itself in the prison's operation by ordering Ms. Wessels to always vote a certain way (here, against involuntary medication of Mr. Lee) as a member of any future *Harper* panels, such a remedy would be illusory. It is speculation as to whether Ms. Wessels might be assigned to serve on a future *Harper* panel. Even if she was a member of a future panel, her hypothetically court-ordered "no" vote could still be outnumbered by the rest of the panel.

In short, Mr. Lee cannot obtain the relief he seeks (even if he could establish the right to such relief) because Ms. Wessels is not an IDOC official with authority to carry out any order from this Court on the relief sought by Mr. Lee. Nor is Ms. Wessels a certain panelist who can prevent a future *Harper* panel from authorizing that Mr. Lee be involuntarily medicated. Hence,

there is no avenue in this case, on the claim against Ms. Wessels, to the relief Mr. Lee seeks. Ms. Wessels is not a proper defendant to a claim seeking an injunction prohibiting IDOC from forcibly medicating Mr. Lee in the future.

Accordingly, Mr. Lee's claim against Ms. Wessels will be dismissed, with prejudice. The Court need not consider Ms. Wessels' summary judgment motion or the substantive merits of Mr. Lee's RLUIPA claim or his motion for summary judgment. Both summary judgment motions will be denied without further consideration.

The Court will allow Mr. Lee a period of 28 days to amend his Prisoner Complaint, should he choose to do so, in order to name one or more defendants against whom injunctive relief under RLUIPA could be ordered. Allowing such an amendment is not a statement from the Court upon the merits of Mr. Lee's claims, one way or the other. Rather, the Court allows a period for such amendment because Mr. Lee is a pro se inmate, is untrained in the law, and has stated a potentially cognizable RLUIPA claim, but one that is not directed at an appropriate defendant.

2. **Ms. Wessels's Motion to Seal Is Granted.**

Ms. Wessels moved to seal certain filings accompanying her motion for summary judgment, including the memorandum in support thereof and three declarations sworn by Jocelyn Patchett, Dr. Scott Eliason, and Dr. Walter Campbell. (Dkt. 25.) She did not move to seal her own declaration accompanying her motion for summary judgment. She amended her motion to seal later the same day the original motion was filed, seeking to also seal her Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. (Dkt. 27.) The amended motion restates the relief requested in the original motion. However, the amended motion was not properly linked in the Case Management/Electronic Case Filing system, so both

**MDO RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, MOTIONS TO SEAL - 10**

the original and amended motions are presently pending. The original motion will be denied as moot in light of the filing of the amended motion. Mr. Lee did not respond to either motion.

Ms. Wessels seeks to seal the requested documents because they contain confidential information about Mr. Lee's mental health history and mental health records, which are discussed in detail in the filings. The motion does not cite or discuss the applicable law. Even though Mr. Lee did not object to the motion, the Court must still consider whether Ms. Wessels's brief argument satisfies the "compelling reasons" test under *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016).

As a starting point, the Court notes that Ms. Wessels's motion for summary judgment was supported by the following documents: (1) a memorandum in support of the motion (Dkt. 24-4); (2) a separate statement of undisputed material facts (Dkt. 26); (3) an affidavit of Ann Greenwalt (Dkt. 23-1); (4) an affidavit of Jamie Hess Smith (Dkt. 23-2); (5) a declaration of Jocelyn Patchett (Dkt. 24); (6) a declaration of Scott Eliason (Dkt. 24-1); (7) a declaration of Sue Wessels (Dkt. 24-2); and (8) a declaration of Walter Campbell (Dkt. 24-3). Only five of these eight documents are requested to be filed under seal. The declarations subject to the motion to seal are sworn by medical professionals who treated Mr. Lee. The declarations and their attachments include detailed diagnoses, medical charts, treating providers' notes, and extensive patient history. Many of these details are referenced in the separate statement of undisputed material facts and the memorandum supporting the motion for summary judgment.

By contrast, the two affidavits and one declaration that are not subject to the motion to seal do not contain confidential information about Mr. Lee's mental health. Rather, they describe Mr. Lee's status and housing while incarcerated and they attach exhibits regarding his judgment of conviction, his cell transfers, and applicable standard operating procedures

regarding religious activity oversight and the process for involuntary medication and treatment. These filings do not directly discuss Mr. Lee's mental health or other potentially-confidential information. In other words, Ms. Wessels took care to present her evidence by filing her supporting documents in separate categories of confidential and non-confidential information.

Mr. Lee's health information, including details about his mental health such as diagnoses, proposed or administered treatments, and treating providers' notes, is information commonly considered as confidential and usually required to be maintained as confidential under applicable statutory law.[7] There is no apparent specific need for its publication. Although there is a strong public interest in open access to judicial records, that interest does not outweigh an individual's interest in keeping health information confidential when such information is not critical to the Court's reasoning in deciding the issue presented. Stated differently, there is no "important public need justifying access" to Mr. Lee's private health information here. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006). The Court is persuaded that Ms. Wessels has shown compelling reasons for sealing the requested documents. There is a compelling interest in sealing the requested records that is not outweighed by a countervailing public interest. Accordingly, the motion to seal will be granted.

However, Defendant's Separate Statement of Undisputed Material Facts (Dkt. 26) contains some information that is appropriate to seal and some information that is not appropriate to seal. Accordingly, Defendant must file, within 14 days, an updated version of this document that redacts only such information as appears in the other documents sealed by this Order. The document on file (Dkt. 26) will remain sealed at this time, but if Defendant does not timely file a

---

[7] Although Ms. Wessels moved to seal, the basis for the request is to protect Mr. Lee's private health information. Thus, it is Mr. Lee's interest the Court weighs.

redacted Separate Statement of Undisputed Material Facts, the Court will issue a subsequent order to unseal the document.

### ORDER

IT IS HEREBY ORDERED as follows:

1. Plaintiff John Lee's Prisoner Complaint (Dkt. 3) is **DISMISSED WITH PREJUDICE** as to Defendant Sue Wessels for lack of standing.

2. Plaintiff John Lee may amend his Prisoner Complaint (Dkt. 3) within 28 days to name one or more additional defendants. If he does not timely amend his Prisoner Complaint this action will be dismissed with prejudice in its entirety.

3. Plaintiff John Lee's Motion for Summary Judgment (Dkt. 21) is **DENIED AS MOOT**.

4. Defendant Sue Wessels's Motion for Summary Judgment (Dkt. 23) is **DENIED AS MOOT**.

5. Defendant Sue Wessels's Motion to Seal (Dkt. 25) is **DENIED AS MOOT**.

6. Defendant Sue Wessels's Motion to Seal (Dkt. 27) is **GRANTED**.

7. Defendant Sue Wessels is ordered to file, by **March 29, 2019**, a redacted version of the Separate Statement of Undisputed Material Facts (Dkt. 26), consistent with this Memorandum Decision and Order; failure to do so will result in an order to unseal the version of this document on file.

DATED: March 15, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge